UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------

UNITED STATES OF AMERICA,

v.

JAMIL BANKS,

Defendant.

20-CR-284 (SHS)

OPINION & ORDER

SIDNEY H. STEIN, U.S. District Judge.

Defendant Jamil Banks has been charged in an indictment with 1) being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and 924(e), 2) possessing with intent to distribute heroin and fentanyl in violation of 21 U.S.C. § 841 (a)(1) and (b)(1)(c), and 3) using and carrying a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i). (Indictment ¶¶ 1-4, ECF No. 6.) He has filed a motion seeking to suppress all physical evidence associated with a police stop and search of his person that occurred on April 20, 2020, which forms the basis for these charges. (Def.'s Mem. at 1, ECF No. 24.) The Court has thoroughly reviewed the video footage of that stop and search and denies Banks' motion to suppress on the basis of that footage and the other evidence in the action.

**I. BACKGROUND**

On April 10, 2020 at 7:04 PM, a team of NYPD officers were travelling in the vicinity of 2675 Valentine Avenue in the Bronx in unmarked patrol cars. (Compl. ¶ 7, ECF No. 1; Gov't's Opp'n at 4.) At least one officer saw the defendant standing in front of 2675 Valentine Avenue, and the officers exited their vehicles and approached the defendant. (*Id.*) Officer Eusebio, whose body camera footage is Government's Exhibit A, initiated the following exchange with the defendant:

> Eusebio: How are you doing guys? Hey man.
>
> Banks: Nothing going on, that's my brother.
>
> Eusebio: That's your brother?
>
> Banks: You can pull our IDs out.
>
> Eusebio: What is that, sir? What is that? An asp? Sir, is that's an asp?
>
> Banks: Is that a who?

Eusebio: That's an asp, that you got back there, or a flashlight?

Banks: No, that's an asp.

Eusebio: That's an asp. Alright, put your hands out of pocket. Let me see.

You're not allowed to have an asp, man.

Banks: I'm sorry, I didn't know that.

Third Person: That's illegal?

Eusebio: That's illegal to have an asp.

(Gov't's Opp'n Ex. A at 00:30-00:58.)

Officer Torres' body cam footage, which is Government's Exhibit B, shows a black cylindrical object in the left rear pocket of the defendant's pants while Officer Eusebio is interacting with Banks. (Gov't's Opp'n Ex. B at 00:38-00:47.) Officer Eusebio begins to frisk Banks after the defendant confirms that he has an asp on his person. (Gov't's Opp'n Ex. B at 00:42.) Officer Eusebio then removes the asp and hands it Officer Lezcano, whose body camera footage is Government's Exhibit C. (Gov't's Opp'n Ex. C at 00:28-00:35.) Officer Torres' body cam footage shows Officer Eusebio continuing to frisk the defendant while Officer Lezcano stands in the background holding the asp. (Gov't's Opp'n Ex. B at 00:58-01:05; 2:37-2:40.)

While Officer Eusebio frisks Banks, he asks Banks if he has any other weapon. (Gov't's Opp'n Ex. A at 1:02.) Officer Eusebio appears to feel something and asks Banks to "get it out." (Gov't's Opp'n Ex. A at 2:03.) Banks removes an object from his person and Officer Eusebio asks "how much?"; he then asks "how many bundles do you got?" (Gov't's Opp'n Ex. A at 2:16, 2:40.) Banks responds "five." (*Id.* at 2:42.) At the 2:47-2:58 mark, Officer Eusebio's body cam footage shows Officer Lezcano holding the extended asp. (Gov't's Opp'n Ex. A at 2:47-2:58.) At 3:02, the officers handcuff Banks. (Gov't's Opp'n Ex. A at 3:02.)

In addition to the asp, Officer Eusebio recovered the following items on the defendant's person:

(1) a .45-caliber Springfield Armory semi-automatic pistol, loaded with multiple .45-caliber cartridges;
(2) a taser;
(3) approximately 50 pink glassines containing a beige powder, which the defendant described as "dope," which subsequently laboratory tested positive for fentanyl and heroin;
(4) approximately 10 purple glassines containing a beige powder, which subsequently

laboratory-tested positive for fentanyl and heroin; and

(5) more than $1,400 in United States currency. (Compl. at ¶ 7.)

## II. LEGAL BACKGROUND

"In the Second Circuit, '[a] defendant is entitled to an evidentiary hearing on a motion to suppress only if the defendant establishes a contested issue of material fact.'" *United States v. Washington*, No. 12-CR-146, 2012 WL 5438909, at *8 (S.D.N.Y. Nov. 7, 2012) (quoting *United States v. Noble*, No. 7-CR-284, 2008 WL 140966, at *1 (S.D.N.Y. Jan. 11, 2008)). "In order to make the requisite showing in sufficient detail, the defendant must submit an affidavit by someone with personal knowledge that disputed facts exist." *Noble*, 2008 WL 140966, at *1. "[A]n evidentiary hearing on a motion to suppress ordinarily is required if the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question." *United States v. Pena*, 961 F.2d 333, 339 (2d Cir. 1992) (internal quotation omitted). "On a motion to suppress evidence in a criminal trial, once [the defendant] has established a basis for his motion, the burden rests on the Government to prove, by a preponderance of the evidence, the legality of the actions of its officers." *United States v. Echevarria*, 692 F. Supp. 2d 322, 332 (S.D.N.Y. 2010) (quoting *United States v. Wyche*, 307 F. Supp. 2d 453, 457 (E.D.N.Y. 2004)).

## III. DISCUSSION

Banks seeks to suppress evidence seized pursuant to the April 10, 2020 stop for three reasons. First, he contends that the stop was invalid because Officer Eusebio could not have seen him doing anything that could be objectively deemed reasonably suspicious from the vantage point of the patrol car. He avers that because he was "[s]tanding in front of a van" on the sidewalk, "it would be impossible for any vehicle driving past him to view the lower half of his body, much less the contents of his back pocket." (Def.'s Mem. at 7.) Second, Banks contends that "there is no indication . . . that [he] was initially stopped for a supposed asp" because the object Officer Eusebio passed to Officer Lezcano is "a length and size that could not have, in any conceivable way, been sticking out of [his] pockets." (Def.'s Mem. at 7-8.) Third, Banks contends that Officer Lezcano's statement that he observed Banks with the asp in plain view is incorrect because, by the time Officer Lezcano arrived on the scene, Officer Eusebio had already seized the asp from Banks' possession. (Def.'s Mem. at 8.)

Defendant's first contention is unavailing. An officer is justified "in appropriate circumstances and in an appropriate manner approach[ing] a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an

3

arrest," *Terry v. Ohio*, 392 U.S. 1, 22 (1968), as long as the officer has "reasonable suspicion" to do so. *United States v. Hensley*, 469 U.S. 221, 229 (1985). "The reasonable suspicion standard is 'not high,'" *Vasquez v. Maloney*, 990 F.3d 232, 239 (2d Cir. 2021) (quoting *Richards v. Wisconsin*, 520 U.S. 385, 394 (1997)), and "requires less than the 'fair probability' of wrongdoing needed to support probable cause." *Id.* (quoting *United States v. Padilla*, 548 F.3d 179, 186-87 (2d Cir. 2008)).

Regardless of whether the officers had reasonable suspicion to stop Banks at the time they *exited* the patrol car, Officer Eusebio could see the asp in Banks' back pocket in plain view when he approached Banks because Banks was standing with his back and pocket visible to Officer Eusebio. (*see* Gov't's Opp'n Ex. B at 00:36.) In Officer Torres' body camera footage, Officer Eusebio can be seen standing a few feet away from Banks and pointing at a dark object visible in Banks' back pocket before any of the officers move to search Banks. (*Id.*) Because possessing a collapsible metal baton is a violation of New York Penal Law section 265.01, which provides that "[a] person is guilty of criminal possession of a weapon in the fourth degree when . . . [h]e or she possesses any . . . billy," Officer Eusebio had reasonable suspicion to stop Banks upon seeing the asp in his pocket. *See People v. Ocasio*, 28 N.Y.3d 178, 181, 184 (N.Y. 2016) (holding that "the only plausible interpretation of the term 'billy' encompasses a collapsible metal baton").

The Court also dismisses Banks' contention that the object Officer Eusebio passed to Officer Lezcano is "a length and size that could not have, in any conceivable way, been sticking out of [his] pockets." (Def.'s Mem. at 7-8.) The asp is collapsible, and when not extended, measures eight inches. (Gov't's Opp'n Ex. D.) Moreover, in the video, the asp is shown protruding from Banks' back pocket. (*see, e.g.*, Gov't's Opp'n Ex. B at 00:38.)

Finally, whether or not Officer Lezcano personally observed Banks with the asp in plain view—as specified in the NYPD report attached as Defendant's Exhibit 2—is irrelevant. (*see* Def.'s Mem. Ex. 2 at 2.) At the very least, the body camera footage from *Officer Eusebio's* perspective shows that Officer Eusebio could see the asp in plain view when approaching Banks. (*see* Gov't's Opp'n Ex. B at 00:36.) Therefore, Officer Eusebio was justified in stopping Banks.

Because Officer Eusebio saw the asp in plain view and received verbal confirmation from Banks that he had an asp in his pocket, he had probable cause to stop and arrest Banks. "An arresting officer has probable cause when the officer has 'knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.'" *Simpson v. City of New York*, 793 F.3d 259, 265 (2d Cir. 2015)

(quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)). "When determining whether probable cause exists courts 'must consider those facts available to the officer at the time of the arrest and immediately before it.'" *Caldarola v. Calabrese*, 298 F.3d 156, 162 (2d Cir. 2002) (quoting *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 569 (2d Cir. 1996)). Contraband in plain view as well as a defendant's answers to police questioning during a stop may provide officers with probable cause to arrest him. *See United States v. Gil*, 792 F. App'x 11, 13-14 (2d Cir. 2019) (noting that the officer's "observation of what appeared to be a brick of cocaine in plain view" contributed to probable cause to arrest the defendant); *Berkemer v. McCarty*, 468 U.S. 420, 439-440 (1984) (noting that a detainee's answers to police questioning may "provide [an] officer with probable cause to arrest him").

The officers also had the authority to search Banks pursuant to the search-incident-to-arrest doctrine. That doctrine provides "an exception to the general requirement that an officer must obtain a judicial warrant supported by probable cause before conducting a search" based on the interests of "protecting arresting officers and safeguarding any evidence of the offense of arrest that an arrestee might conceal or destroy." *United States v. Diaz*, 854 F.3d 197, 205 (2d Cir. 2017) (internal quotation marks omitted) (quoting *Arizona v. Gant*, 556 U.S. 332, 339 (2009)); *see also Shipley v. California*, 395 U.S. 818, 819-820 (1969). Because Officer Eusebio observed the asp in Banks' pocket and received verbal confirmation from Banks that the object was an asp, Officer Eusebio both had 1) probable cause to arrest Brown for possession of the asp and 2) the authority to perform a search incident to arrest.

## IV. Conclusion

Because there are no "contested issues of fact going to the validity of the search," *Pena*, 961 F.2d at 339 (quotation omitted), no evidentiary hearing is necessary. Based on the Court's review of the evidence adduced to date, including the relevant body camera footage, the Court denies Banks' motion to suppress.

Dated: New York, New York
      June 4, 2021

SO ORDERED

_____
SIDNEY H. STEIN
U.S.D.J.